1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PROTECT OUR COMMUNITIES FOUNDATION, BACKCOUNTRY AGAINST DUMPS, and DONNA TISDALE,<br><br>                         Plaintiffs,<br>  vs.<br><br>IMPERIAL COUNTY BOARD OF SUPERVISORS, and DOES I-XX,<br><br>                         Defendants,<br>PATTERN ENERGY GROUP LP, OCOTILLO EXPRESS LLP and DOES XI-XX,<br>             Real parties in interest. | CASE NO.  12cv1310-GPC(PLC)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND**<br><br>[Dkt. No. 12.] |

      Before the Court is Plaintiffs' motion to remand the case to state court for lack of subject matter jurisdiction. (Dkt. No. 12.) An opposition and a reply were filed by the parties. (Dkt. Nos. 13, 18.) Based on the briefing, supporting documentation and applicable law, the Court GRANTS Plaintiffs' motion to remand.

### Background

      Plaintiffs The Protect Our Communities Foundation; Backcountry Against Dumps; and Donna Tisdale filed a verified petition for writ of mandate and complaint for declaratory and injunctive relief in state court. (Dkt. No. 1.) They seek to enjoin the Imperial County Board of Supervisors ("County") and real parties in interest,

Pattern Energy Group, LP and Ocotillo Express, LLP ("collectively known as "Ocotillo"), from taking any action to construct the Ocotillo Wind Energy Facility ("Project"); directing the County to set aside and vacate its certification of the Environmental Impact Report ("EIR"); and to set aside and vacate its approval of the Conditional Use Permit and Variance[1] issued for the Project as not in compliance with the California Environmental Quality Act ("CEQA"). (Id.) Ocotillo and Pattern, as real parties in interests, are named as defendants as they are the Project proponent and the applicant for the Project and the Conditional Use Permit and Variance.

Ocotillo seeks to construct a 112 wind turbine renewable energy facility located in Imperial County. In December 2010, Ocotillo submitted an application to Imperial County for a Conditional Use Permit for the operation of the Project and for a Variance from the County's 100-foot height limit. (Id. ¶ 20.) Ocotillo also submitted an application to the United States Bureau of Land Management ("BLM") for a right-of-way ("ROW") grant and an amendment to the California Desert Conservation Area ("CDCA") Plan to allow the construction of the Project. (Id.)

BLM and Imperial County prepared and issued a joint Draft Environmental Impact Statement/Draft Environmental Impact Report in June 2011. (Id. ¶ 21.) Public and agency comments were made on the project. (Id.) In March 2012, Imperial County and BLM issued a Final Environmental Impact Statement/Final Environmental Impact Report ("FEIR") that addressed impacts of six alternatives for the Project. (Id. ¶ 22.) Prior to final consideration, Ocotillo proposed a new Project configuration of 112 wind turbines. (Id. ¶ 24.) Imperial County approved the 112 wind turbines by certifying the FEIR and allegedly issued a Conditional Use Permit and Variance for the Project on April 25, 2012. (Id. ¶ 24.) On May 11, 2012, BLM approved Ocotillo's right-of-way application. (Id. ¶ 25.)

On May 25, 2012, Plaintiffs filed a verified petition for writ of mandate and

---

[1] The parties dispute whether the County ultimately approved a Conditional Use Permit and Variance for the Project.

complaint for declaratory and injunctive relief challenging the County's actions concerning the Project in the San Diego Superior Court. (Dkt. No. 1-1.) On May 31, 2012, real parties in interest, Pattern Energy Group, LP and Ocotillo Express, LLC, filed a notice of removal. (Dkt. No. 1.) On July 2, 2012, Plaintiffs filed a motion to remand to state court for lack of subject matter jurisdiction. (Dkt. No. 12.) Ocotillo filed an opposition on July 23, 2012. (Dkt. No. 13.) Plaintiffs filed a reply on July 30, 2012. (Dkt. No. 18.)

## Discussion

### I.  Legal Standard on Motion to Remand

Plaintiffs argue that the case should be remanded to state court as they are challenging the County's decision made pursuant to the state CEQA law, not federal law. Ocotillo contends that removal is proper under the federal officer removal statute pursuant to 28 U.S.C. § 1442(a).

28 U.S.C. § 1442(a)(1), also known as the federal officer removal statute, provides that an action may be removed by "[a]ny officer . . . of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ." 28 U.S.C. § 1442(a)(1). Removal under § 1442(a)(1) requires the moving party to show "that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a "colorable federal defense." Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006) (citing Jefferson Cnty. Alabama v. Acker, 527 U.S. 423, 431 (1999)); Mesa v. California, 489 U.S. 121, 124–25 (1989).

Generally, there is a strong presumption against removal jurisdiction and the defendants always have the burden of establishing that removal is proper. Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992). However, the federal officer removal statute is an exception to this general rule and § 1442 is interpreted broadly in favor of removal. Durham, 445 F.3d at 1252; Ballenger v. Agco, No. 06-2271 CW, 2007 WL

1813821, at *2 (N.D. Cal. June 22, 2007). For example, under § 1442, federal officers can remove both civil and criminal cases while § 1441 only provides for civil removal; a federal officer can remove a case even if the plaintiff couldn't have filed the case in federal court in the first instance; removals under § 1441 are subject to the well-pleaded complaint rule while those under § 1442 are not; and where all defendants must consent to removal under § 1441, a federal officer or agency defendant can unilaterally remove a case under § 1442. Durham, 445 F.3d at 1253. Under the federal officer removal statute, cases against federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." Acker, 527 U.S. at 431.

## II. Federal Officer Removal Statute

While the parties do not dispute that Pattern and Ocotillo, the moving parties, are "persons" within the meaning of the statute, Plaintiffs challenge whether Ocotillo, Pattern, and the County of Imperial[2] acted under the direction of a federal officer and under color of federal office.

### A. Whether There is a Causal Nexus Between Ocotillo's Action, Taken Under the Direction of a Federal Agency or Officer, and Plaintiffs' Claims

The "causal nexus" between a federal officer's directions and the private actor "must be predicated on a showing that the acts forming the basis of the state suit were performed pursuant to an officer's 'direct orders or comprehensive and detailed regulations.'" Freiberg v. Swinerton & Walberg Prop. Servs., 245 F. Supp. 2d 1144, 1152 (D. Colo. 2002) (quoting Ryan v. Dow Chem. Co., 781 F. Supp. 934, 947 (E.D.N.Y.1992)). To show that it was acting under the direction of a federal officer, Ocotillo must show that a federal officer had "direct and detailed" control over it. Fung, v. Abex Corp., 816 F. Supp. 569, 573 (N.D. Cal. 1992) (citing Ryan v. Dow

---

[2]While Plaintiffs' arguments mainly address whether Defendant County of Imperial is subject to the federal officer removal statue, Ocotillo was the party to file the notice of removal and filed an opposition to the motion to remand. Therefore, the Court looks at whether Ocotillo and Pattern can satisfy removal under § 1442(a).

1 Chemical Co., 781 F. Supp. 934, 946 (E.D.N.Y. 1992)).  It must establish a "nexus
2 between the actions of the federal officers and the actions for which the defendant is
3 being sued." Id.  If Defendants establish "'only that the relevant acts occurred under
4 the general auspices of" being a participant in a regulated industry, they are not entitled
5 to § 1442(a)(1) removal." Id. (citations omitted).

6   The rule established that removal by a "person acting under" a federal officer
7 must be predicated upon a showing that the acts that form the basis for the state civil
8 or criminal suit were performed pursuant to a federal "officer's direct orders or to
9 comprehensive and detailed regulations." Good v. Armstrong World Indus., Inc., 914
10 F. Supp. 1125, 1128 (E.D. Pa. 1996).  To satisfy the causation element, the defendant
11 must prove that the acts being sued upon were undertaken by a federal officer or
12 "person acting under him," Florida v. Cohen, 887 F.2d 1451, 1453–54 (11th Cir.
13 1989), and that those acts were under color of the relevant federal office. Maine Ass'n
14 of Interdependent Neighborhoods v. Commissioner, 876 F.2d 1051, 1054 (1st Cir.
15 1989); Northern Colo. Water Conservancy Dist. v. Board of County Comm'rs, 482 F.
16 Supp. 1115, 1117-19 (D.Colo. 1980) (where federal agency exercised only the power
17 to approve or disapprove pollution control plans developed by local governmental
18 entities facing suits concerning content of plans, entities were not "acting under"
19 officers; the requisite nexus of control was lacking).

20   In Watson v. Philip Morris Companies, Inc., 551 U.S. 142 (2007), the United
21 States Supreme Court held that the Federal Trade Commission's heavy regulation and
22 supervision of a cigarette-manufacturing firm's product-testing did not, standing alone,
23 satisfy the statute's "acting under" requirement.  In that case, the Court explained that
24 a private company's compliance with federal laws, rules and regulations, even though
25 highly detailed and highly supervised and monitored does not fall within the statutory
26 phrase "acting under" a federal "official." Id. at 153.  There is a distinction between
27 compliance with the law and "acting under" a federal official who is giving an order
28 or enforcing the law. Bennett v. MIS Corp., 607 F.3d 1076, 1086 (6th Cir. 2010).

Ocotillo argues that the implementation of the Project that Plaintiffs challenge is being carried out under the express direction and approval of Bureau of Land Management, a federal agency. Ocotillo alleges that it is constructing the Project according to the rules and regulations promulgated by the federal government. The ROW grant contains several stipulations directing the way in which the Project must be constructed, operated and decommissioned. Specifically, the ROD grant requires Ocotillo to comply with the requirements of the USFWS Biological Opinion for the Project, the requirements set forth in the Environmental and Construction Compliance Monitoring Plan and the avoidance, minimization and mitigation measures. Moreover, BLM retains the authority to adjust the rent "whenever necessary" to "reflect changes in the fair market value" of the right of way." Lastly, the Project also implements federal policies and objectives. Plaintiffs disagree arguing that Ocotillo has not presented any evidence suggesting that it or the County was "acting under" an order from a federal officer or agency.

Ocotillo's facts to support that it was "acting under" a federal agency amounts to an applicant's compliance with an agency's comprehensive regulatory scheme, not an applicant subject to the direction, supervision and control of the BLM as contemplated under § 1442(a). Ocotillo has not presented any declaration or facts to show how BLM directly controlled and directed the actions of Ocotillo in implementing or complying with the ROW. Therefore, Ocotillo has failed to show that its actions were taken under the direction of a federal agency or officer.

Moreover, Ocotillo must demonstrate a causal nexus between the claims against it and the acts it performed under color of federal office. See Overly v. Raybestos-Manhattan, No. C-96-2852 SI, 1996 WL 532150, at *4 (N.D. Cal. 1996) (Noting that the final requirement under the Mesa test is that there be a causal connection "between the rules imposed by the United States on the defendant contractor by the federal government and the liability asserted by plaintiff.") The "causal nexus" between a federal officer's directions and the private actor "must be

1  predicated on a showing that the acts forming the basis of the state suit were performed
2  pursuant to an officer's 'direct orders or comprehensive and detailed regulations.'"
3  Freiberg v. Swinerton & Walberg Prop. Servs., 245 F. Supp. 2d 1144, 1152 (D. Colo.
4  2002) (quoting Ryan v. Dow Chem. Co., 781 F. Supp. 934, 947 (E.D.N.Y.1992)). A
5  causal connection exists because the liability Defendants face arises from their official
6  duties performed in accordance with a government contract. See Willingham v.
7  Morgan, 395 U.S. 402, 409 (1969).

8  In this case, Plaintiffs challenge the County's certification of the EIR alleging
9  it does not comply with CEQA. The real parties in interest are the applicant and
10 builder of this Project. Plaintiffs' claim concern actions taken by the County under
11 CEQA. Ocotillo has not shown that a causal nexus exists between Plaintiff's CEQA
12 claims and Ocotillo's conduct. Accordingly, the Court concludes that Ocotillo has
13 failed to show a causal nexus between its actions, taken under the direction of a federal
14 agency, and Plaintiffs' claims.

15 Therefore "federal officer" jurisdiction is not proper under § 1442(a)(1) in this
16 case.

17 **B.    State Law Compliance on Federal Lands**

18 Throughout its brief, Ocotillo emphatically asserts that Plaintiffs improperly seek
19 to enjoin a project that the federal government has approved on federal lands in state
20 court. It argues that the federal government has exclusive province to approve the
21 Project and County approval was not necessary for the Project to proceed.

22 In response, Plaintiffs contend that the County issued several discretionary land
23 use approvals, including certification of the FEIR for the Project and adoption of a
24 resolution that reconfirmed the County's certification of the FEIR. Therefore, they
25 seek to set aside the County's unlawful approvals for the Project which is in violation

of CEQA. Neither party has addressed whether preemption[3] would apply in this case.

"CEQA was enacted by the California legislature in 1970, a year after its federal counterpart, NEPA, was promulgated." People, By & Through California Dep't of Transp. v. City of S. Lake Tahoe, 466 F. Supp. 527, 536 (E.D. Cal. 1978). "The legislative purpose of CEQA was to ensure that environmental consideration would play a significant role in governmental decision-making. Id.; see also Cal. Pub. Res. Code §§ 21000-21001. An EIR must be prepared on any "project" a local agency intends to approve or carry out which "may have a significant effect on the environment." Cal. Pub. Res. Code §§ 21100, 21151. "Project" is broadly defined and includes any activities which have a potential for resulting in a physical change in the environment, directly or ultimately. Id. § 21065. "The definition encompasses a wide spectrum, ranging from the adoption of a general plan, which is by its nature tentative and subject to change, to activities with a more immediate impact, such as the issuance of a conditional use permit for a site specific development proposal." Sierra Club v. Cnty. of Sonoma, 6 Cal. App. 4th 1307, 1315 (1992) (citation omitted).

Contrary to Ocotillo's argument, the County is not precluded from fully undertaking an environmental review under state law. Nelson v. County of Kern, 190 Cal. App. 4th 252, 282 (2010). In Nelson, the court explained,

> Based on the analysis set forth in California Coastal Commission v. Granite Rock Co., [480 U.S. 572 (1987)] . . . there is nothing necessarily problematic (from a preemption standpoint) in the fact that County is called upon to apply CEQA . . . .regarding a mining project on federal land, even if that project already received federal environmental review and "approval" by BLM under NEPA. And, as we have noted above, CEQA clearly contemplates that CEQA and NEPA may both apply to the same project, which was the case here.

Id. at 282.

In Nelson, the petitioner challenged the adequacy of the state environmental analysis performed by the County on a proposed surface mining operation. Id. at 259.

---

[3]While Ocotillo argued that it would raise the federal defense of preemption as part of the factors in support of the federal officer removal statute, it did not present substantive arguments as to preemption.

1  The proposal included mining of calcite marble for a 30 year period and a reclamation
2  plan to restore the land thereafter.  Id.  The reclamation plan was pursuant to the state
3  Surface Mining and Reclamation Act of 1975, so the County limited its environmental
4  review to the reclamation plan only and not the potential impacts of the proposed
5  mining operations.  Id. at 260.  The County limited its review because the mining
6  would take place on federally owned land and BLM was considered to be the sole
7  permitting agency for purposes of mining operations and responsible to perform its
8  own environmental review under NEPA.  Id.  After BLM completed its environmental
9  assessment and approved the plan for surface mining operations, the County separately
10 considered the reclamation plan and adopted a negative declaration and approved the
11 plan.  Id.  The petitioner sought to set aside the County's determinations and approvals
12 on the ground that failure to review the entire project violated CEQA.  Id.  The Court
13 of Appeal held that the County erred in limiting its environmental review to the
14 reclamation plan.  Id. at 267.  It found that the County was still required to comply with
15 CEQA with respect to the entire project.  Id. at 280.  The Court of Appeal concluded
16 that there will be projects where both CEQA and NEPA apply and CEQA specifically
17 provides for such situations.  Id.  CEQA compliance is required under state law, and
18 absent preemption, applies on federal lands.  See California Coastal Comm'n, 480 U.S.
19 at 1424-25 ("'the State is free to enforce its criminal and civil laws' on federal land so
20 long as those laws do not conflict with federal law.")

21     In this case, Plaintiffs seek to set aside the County's certification of the EIR as
22 not in compliance with CEQA.  The State is free to enforce its state environmental laws
23 on federal lands in state court.  See id.  Therefore, removal was not proper.

24 **C.   Attorneys' Fees and Costs**

25     Plaintiffs seek attorneys' fees and costs under 28 U.S.C. § 1447(c).  § 1447(c)
26 provides that "[a]n order remanding the case may require payment of just costs and any
27 actual expenses, including attorney fees, incurred as a result of the removal."  28
28 U.S.C. § 1447(c).  The district court has discretion to award fees under § 1447(c).

1  Martin v. Franklin Capital Corp., 546 U.S. 132, 139 (2005). "Absent unusual
2  circumstances, courts may award attorney's fees under § 1447(c) only where the
3  removing party lacked an objectively reasonable basis for seeking removal." Id. at 141.
4  "The objective reasonableness of the removal depends on the clarity of the applicable
5  law and whether such law "'clearly foreclosed' the defendant's arguments for
6  removal." Californians for Alternatives to Toxics v. North Coast Railroad Auth., C-11-
7  4102 JCS, C-11-4103 JCS, 2012 WL 1610756, at *12 (N.D. Cal. May 8, 2012) (citing
8  Lussier v. Dollar Tree Stores, Inc., 518 F.3d 1062, 1066-67 (9th Cir. 2008)).
9  　　　Here, the Court finds Ocotillo did not lack an objectively reasonable basis for
10 seeking removal. Accordingly, the Court DENIES Plaintiffs' request for attorneys'
11 fees and costs.

## Conclusion

13 　　　Based on the above, the Court GRANTS Plaintiffs' motion to remand to state
14 court for lack of subject matter jurisdiction. The Court also DENIES Plaintiffs' request
15 for attorney's fees and costs.
16 　　　IT IS SO ORDERED.

18 DATED: May 15, 2013

HON. GONZALO P. CURIEL
United States District Judge